IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:11-cv-01027 |
| v. | ) ) ) | Judge Nixon Magistrate Judge Bryant |
| JOE NATHAN SCOTT, JOE SCOTT d/b/a SCOTT'S MULTI-PURPOSE BUILDING, and CHARLES MARTIN, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Plaintiff United States Liability Insurance Company's Motion for Summary Judgment ("Motion") (Doc. No. 35), filed with a Memorandum in Support (Doc. No. 36), Statement of Undisputed Facts (Doc. No. 37), Affidavit of Kathy Carhart (Doc. No. 38), and numerous attachments and exhibits (Doc. Nos. 36-1 to 36-2, 37-1 to 37-7, 38-1 to 38-2). Defendants Joe Nathan Scott, Joe Scott d/b/a Scott's Multi-Purpose Building, and Charles Martin, filed a Response in Opposition to the Motion (Doc. No. 43), with a Memorandum in Support (Doc. No. 44), Statement of Additional Undisputed Facts (Doc. No. 48), Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 45), Affidavits of Joe Scott and Kevin D. Scott (Doc. Nos. 46-47), and two exhibits (Doc. Nos. 44-1 to 44-2). Plaintiff filed a Reply (Doc. No. 49) with an attached exhibit (Doc. No. 49-1), and a Response to Defendants' Statement of Undisputed Facts (Doc. No. 50) with an attached exhibit (Doc. No. 50-1). Defendants then filed an Amended Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 52), a Sur-Reply (Doc. No. 58), and Supplemental Affidavits of Joe Scott and Kevin D. Scott (Doc. Nos. 53-54).

1

For the reasons below, Plaintiff's Motion is **GRANTED** to the extent the Court finds that the policy issued to Defendants Joe Nathan Scott and Joe Scott d/b/a Scott's Multi-Purpose Building is voidable and Plaintiff owes no duty to defend or indemnify Defendants in the underlying case.

I.  **BACKGROUND**

This case involves a Declaratory Judgment Action by Plaintiff United States Liability Insurance Company. Plaintiff prays for a declaration that it owes no duty to defend or indemnify Defendants Joe Nathan Scott and Joe Scott d/b/a Scott's Multi-Purpose Building in an underlying state court case currently pending before the Montgomery County, Tennessee, Circuit Court at Clarksville ("underlying case").

*A. Factual Background*[1]

Defendant Joe Nathan Scott ("Defendant Scott" or "Scott") is the owner of a property located at 930 College Street in Clarksville, Tennessee. On the property stands a structure known as Scott's Multi-Purpose Building ("Scott's Building"), wherein Scott operated a nightclub or bar. The Nightclub/bar was open to the public and offered food, alcoholic beverages, televisions for public viewing, a dance floor, and a billiards table. Scott's Building was also sometimes leased for private events. In February 2008, while Scott's Building was being operated by Scott as a nightclub/bar, Defendant Charles Martin was shot in the parking lot. Defendant Martin subsequently filed suit against Defendants Joe Nathan Scott and Joe Scott d/b/a Scott's Multi-Purpose Building in Montgomery County, Tennessee, Circuit Court, alleging that Defendant Scott and Scott d/b/a Scott's Multi-Purpose Building failed to provide adequate

---

[1] All facts in this section are undisputed and are taken from Defendants' Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 45), unless otherwise noted.

2

security at the nightclub/bar. Up to this point, Plaintiff has defended Defendants in the underlying case under a reservation of rights, and has now filed the above-captioned case seeking a Declaration of Rights.

In 2007, Defendant Scott applied for a Commercial General Liability insurance policy ("policy") from Plaintiff through his insurance agent. The policy, in part, covered the property at 930 College Street, including Scott's Building. The policy was classified in the application as one covering: "Buildings or Premises – bank or office – mercantile or manufacturing (lessor's risk only) – Other than Not-for-Profit, Code No.: 61212." This classification of "lessor's risk only" is one which contemplates that the insured is leasing the premises to others for commercial purposes. The application for insurance submitted by Defendant Scott ("application") contained the following question: "Does the Applicant engage in any operations or have any classifications on their premise(s) other than those listed in Item III Locations of Coverage and Corresponding Classifications?" The answer supplied on the application for that question was "No." Additionally, above the applicant's signature line, the following statement appeared:

> Applicant's Warranty Statement: I warrant that the information provided in this Application, and any amendments or modifications to this Application are true and correct. I acknowledge that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy by Company . . . .
>
> I acknowledge that this Application is deemed incorporated by reference in a policy issued by Company and in reliance thereon whether or not the Application is attached to the policy.
>
> I acknowledge and agree that a breach of this WARRANTY STATEMENT is grounds for Company to declare void any policy or policies issued in reliance thereon and/or deny claim(s) for coverage thereunder.

The parties agree that the application signed by Defendant Scott affirmatively represented that "[a]ll locations are rented," and that the information supplied in the application identified no classification which contemplated the ownership or operation of a nightclub or bar. Based upon the application, Plaintiff issued a policy to Joe Nathan Scott as the named insured, the policy at issue in this case.

*B. Procedural Background*

Plaintiff filed the pending Motion (Doc. No. 35) on June 15, 2012, along with a Memorandum in Support (Doc. No. 36), Statement of Undisputed Facts (Doc. No. 37), Affidavit of Kathy Carhart (Doc. No. 38), and numerous attachments and exhibits (Doc. Nos. 36-1 to 36-2, 37-1 to 37-7, 38-1 to 38-2). Defendants filed a Response in Opposition to the Motion (Doc. No. 43) on August 28, 2012, with a Memorandum in Support (Doc. No. 44), Statement of Additional Undisputed Facts (Doc. No. 48), Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 45), Affidavits of Joe Scott and Kevin D. Scott (Doc. Nos. 46-47), and two exhibits (Doc. Nos. 44-1 to 44-2). On September 7, 2012, Plaintiff filed a Reply (Doc. No. 49) with an attached exhibit (Doc. No. 49-1), and a Response to Defendants' Statement of Undisputed Facts (Doc. No 50) with an attached exhibit (Doc. No. 50-1). Defendants filed an amended Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 52) on September 16, 2012, along with a Sur-Reply (Doc. No. 58), and Supplemental Affidavits of Joe Scott and Kevin D. Scott (Doc. Nos. 53-54).

**II.     STANDARD OF REVIEW**

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary

element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

**III.    ANALYSIS**

Plaintiff advances two main arguments in its Motion. First, Plaintiff argues that the policy at issue is void *ab initio* "due to material misrepresentations made by Scott in his applications for insurance." (Doc. No. 35 at 1.) In the alternative, Plaintiff argues that it has no duty to defend or indemnify Defendants because Scott's use of the property at 930 College Street was beyond the limitations of the coverage provided under the policy. (*Id*. at 1-2.)

Defendants argue in their Response that Scott did not make material misrepresentations in the applications for insurance. (*See* Doc. No. 44 at 5-9.) Specifically, they argue that there was no intentional misrepresentation and that the representations in the application did not increase the risk of loss to the insurer. (*See id.*) Further, Defendants argues that the principle of equitable estoppel defeats Plaintiff's misrepresentation defense to coverage. (*See id.* at 12.)

*A. The Application Contained Misrepresentations*

Under Tennessee statute, misrepresentations in an application for insurance generally cannot be advanced by the insurer to defeat coverage, but there are exceptions. Tennessee Code Annotated § 56-7-103 provides:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103 (2010). Thus, an insurer must make two showings in order to void the policy under this statute. First, the insurer must prove that answers to questions or representations made in the application are actually false. Second, the insurer must show that the falsities were either intended or that they material, that is, that they increased the risk of loss to

6

the insurer. *See Womack v. Blue Cross & Blue Shield of Tennessee*, 593 S.W.2d 294, 295 (Tenn. 1980). Assessing the truthfulness of the answers provided is typically a jury function; however, a trial judge can make that determination where reasonable minds could not differ on the issue. *Id.* Further, determination of whether false answers on the application increased the risk of loss to the insurer is a question of law for the trial judge. *Id.*

Here the Court finds that there were misrepresentations made in the application for insurance. In fact, Defendants admit to several misrepresentations. First, and most importantly, Defendants admit that the application stated affirmatively that the nature of the coverage applied for was "lessor's risk only." (Doc. No. 45 ¶ 3.) Second, Defendants admit that the application affirmatively represented that "all locations are rented." (*Id.* ¶¶ 12.) Additionally, Defendants admit that Scott did not require all commercial tenants to name him as an additional insured party (*Id.* ¶ 16), nor did he obtain certificates of insurance from his tenants confirming coverage (*Id.* ¶ 18), despite representing in the application that he would do both (*Id.* ¶¶ 8, 9). Finally, Defendants admit that the application did not contemplate the ownership of a nightclub or bar. (*Id.* ¶ 19.)

*B. Defendants are Bound by the Representations of Scott's Insurance Agent*

Before proceeding, the Court will address Defendants' argument suggesting that because Scott did not fill out the insurance application himself, he necessarily did not make misrepresentations to Plaintiff. (*See* Doc. No. 44 at 9.) Specifically, Defendants argue that "the insured was an elderly man with an eighth-grade education. He provided correct information to [his] agent. Consequently, de did not in any way attempt to deceive the [Plaintiff]." (*Id.*) Defendants later reiterate that Scott "provided accurate information to his agent who prepared

7

the same for his signature," and that "in fact, at the same time with the same agent, [Scott] disclosed that the property was operated as a 'restaurant/club' by himself and others." (*Id.*)

In *Smith v. Tennessee Farmers Life Reassurance Co.*, the Court of Appeals of Tennessee sharply rebuked what it called the "but I didn't read it" defense, proclaiming that the "law in Tennessee on this issue has been long settled." 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006) (citations omitted). The *Smith* Court stated, "[t]he failure to read an application for insurance does not insulate an applicant from errors or omissions in a signed application. A party's signature binds him or her as [a] matter of law to the representations in the signed document." *Id.* There is no question that Defendant Scott signed the application. (*See* Doc. No. 37-4 at 4.) If indeed Defendant Scott provided truthful information to his insurance agent who then inexplicably botched the application, he may have other recourse. The Court cannot, however, absolve Defendant Scott of the consequences of his own negligence. By signing the application, Scott bound himself to the representations contained therein.

Therefore, based upon Defendants' own admissions and Scott's responsibility for the information provided in the application, the Court finds that there is no genuine dispute of material fact as to whether the application contained misrepresentations. Finding that it did, the only remaining questions for the Court are whether the misrepresentations were intentional and, if not, whether they increased the risk of loss to the insurer. *See* Tenn. Code Ann. § 56-7-103 (2010).

### C. There is No Evidence of Intentional Misrepresentation

Although Plaintiff curiously insinuates intentional misrepresentation by Scott, it presents no evidence of the same. Instead, Plaintiff offers only its own conjecture, arguing that there are "suspiciously strong indication[s]" of intentional deception. (Doc. No. 36 at 13.) Defendant

Scott, however, avers in his sworn affidavit testimony that he did not intentionally misrepresent any information in the application. (*See* Doc. No. 46 ¶ 23.) As credibility determinations are a classic jury function, the Court finds that Scott's testimony alone creates a genuine dispute of material fact on this issue. *See Anderson*, 477 U.S. at 254 ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict"). Therefore, if Plaintiff is to prevail at this stage, it must show that the misrepresentations in the application were material, that is, that they increased the risk of loss to the insurer.

### D. The Misrepresentations in the Application Increased the Risk of Loss

Misrepresentations, even if unintentional, may void an insurance policy if they increase the risk of loss to the insurer under the policy. Tenn. Code Ann. § 56-7-103 (2010). The Court of Appeals of Tennessee has opined that in making this determination, courts should evaluate whether the misrepresentation is of "such importance that it naturally and reasonably influences the judgment of the insurer in making the contract." *Mixon v. Great S. Life Ins. Co.*, 2001 Tenn. App. LEXIS 636 at *11 (Tenn. Ct. App. 2001) (quoting *Sine v. Tennessee Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993)).

Plaintiff presents sworn affidavit testimony of Kathy Carhart, the underwriter responsible for reviewing Scott's application. (*See* Doc. No. 38.) Ms. Carhart testified that the coverage in Scott's application was classified as "lessor's risk only," that it "identified no classification which contemplated the ownership and/or operation of a nightclub or bar," and further that Scott "never paid a premium for insurance coverage to protect him in connection with his owning and/or operating a nightclub or bar." (*Id.* ¶ 8.) Ms. Carhart also testified that "based on the

9

answers and information" in the application, "[she] determined that issuing a renewal policy of insurance for Joe Scott would be acceptable." (*Id.* ¶ 9.) She further testified that "the information sought by the questions in the application . . . and the information provided in response to those questions is deemed by [Plaintiff] to be important and necessary so as to enable it to make a fair appraisal of the acceptability of risk and the appropriate pricing relative to any insurance coverage it has been requested to provide." (*Id.* ¶ 11.) Ms. Carhart concludes that "[her] judgment as an underwriter in determining whether a policy of insurance was to be issued by [Plaintiff] was naturally and reasonably influenced by the representation and/or misrepresentation of information provided in the application," and that "had Joe Scott provided true and accurate information in response to the questions in the application . . . [Plaintiff] would not have issued the subject liability insurance policy." (*Id.* ¶¶ 12, 17.)

Defendants argue in response that the alleged misrepresentations in the application did not increase the risk of loss to Plaintiff. (*See* Doc. No. 44 at 10.) Defendants contend:

> the shooting occurred after the club was closed, in the parking lot, between men who were not fighting or arguing in the bar. Moreover, the insured's premises [sic] is located in a high crime area. It made no greater risk for an individual to be shot in the parking lot at 3:30 a.m. irrespective of whether the premises were leased or Scott was operated the club.

(*Id.*; *see* Doc. No. 47.) Defendants add that, "had the underlying Complaint been based upon an injury due to intoxication and the parties had been drinking in the club then [Plaintiff's] argument would indeed have merit." (*Id.*) Defendants conclude instead that "the location of the premises has more to do with the altercation than the type of business operated therein." (*Id.*)

In support of their argument, Defendants offer the testimony of Kevin D. Scott, an employee of the bar and the son of Defendant Joe Scott. (*See* Doc. No. 47.) Kevin Scott

10

testified that he "was working in the club that night of the incident and believes that the shooter was not a patron of the club, and the victim did not have any alcohol related altercations in the club." (*Id.* ¶ 3.) Further, Scott testified that he was "in the club working and [is] unaware if either or both [parties to the shooting] were even in the club that evening," and that "the shooting occurred after the club was closed, in the parking low, between men who were not fighting in the bar." (*Id.* ¶¶ 4, 5.)

Defendants' argument is unavailing; they appear to assert merely that the existence of the nightclub/bar was not the cause of the shooting on the property, evidenced only by Kevin Scott's testimony that he did not witness the two men arguing or fighting in the bar earlier in the night. Therefore, according to Defendants, the fact of the bar's operation did not necessarily increase the risk that a shooting would occur. Defendants' position is wholly counter-intuitive and contrary to Tennessee law. First, suggesting that the shooting may have occurred on the property on that evening simply because of its location in a high-crime area, even in the absence of the bar, does not in any way negate the proposition that the bar's operation *increased the risk* of such an occurrence. More importantly, the relevant inquiry is not whether the misrepresentations in the application increased the risk that any particular event, such as a shooting, would take place on the property. *See Tennessee Farmers Life Reassurance Co.*, 210 S.W.3 at 590 (opining that in order to void the policy, the misrepresentation "need not involve a hazard that actually produced the loss in question") (citations omitted). The proper question under the statute is whether the misrepresentations increased the risk of loss generally, such that an insurer having the benefit of truthful information would have charged a higher premium to protect itself against an increased risk of loss, or otherwise deemed the risk altogether unacceptable.

The Court finds that the misrepresentations in the application at issue here are of the type likely to "influence the judgment of the insurer in making the contract." *Sine*, 861 S.W.2d at 839. According to a publication of the International Risk Management Institute:

> When an organization owns a building and leases a substantial amount of that building to other businesses, the organization's liability exposures arising from that premises are reduced because the tenants will carry liability insurance for their portions of the building [and may have "hold harmless" clauses indemnifying the landlord]. . . .
>
> In recognition of the reduced exposures associated with these actions, a substantial rate credit is available to insured's who occupy less than 90 percent of an owned building. The portion of the premises occupied by the insured is classified and rated according to the insured's business operations. The remainder of the premises is classified in one of two classification codes which carry a much lower rate than the regular 'buildings or premises' codes.

Gibson & McLendon, *Commercial Liability Insurance* (International Risk Management Institute, Inc.1987) "CGL Classification and Ratings Tips," p. VIII.E.2.

There are several pieces of information included in the application that appear to represent that Scott's Building was contemplated as a space which would be rented to commercial tenants and should therefore be classified appropriately as "lessor's risk only." Most notable in the Court's opinion, is the box on the application labeled "Description of Operations," which contained the letters "LRO," an acronym for "lessor's risk only." (*See* Doc. No. 37-4 at 1.) Moreover, as mentioned previously, Defendant Scott represented in the application that he required all commercial tenants to name him as additional insured, that he required all commercial tenants to obtain insurance, and that he obtained certificates from all tenants confirming such coverage. (*See id.* at 2-3.) Finally, under the section of the application labeled

"Additional Eligibility Information," the following question appeared: "Does the Applicant engage in any operations or have any classification on their premises other than those listed in Item III Locations of Coverage and Corresponding Classifications?" The box labeled "No" is checked. (*Id.* at 3.)

The Court finds that a reasonable underwriter, basing his or her judgment on misrepresentations in the application, would believe that Scott's Building was appropriately classified as "lessor's risk only." The Court further concludes as a matter of law that the misrepresentations were material, that is, that they increased the risk of loss under Tenn. Code Ann. § 56-7-103. It is common sense that there is a much higher risk of liability associated with owning and operating a nightclub that serves alcohol, than is involved in leasing a building to tenants who are independently insured. The increased risk associated with the former would naturally dictate a higher premium to be paid by the insured, to compensate the insurer for incurring the increased probability of loss. Moreover, the Court has no difficulty in believing the sworn testimony of Plaintiff's underwriter, Kathy Carhart, that but for the misrepresentations in the policy, Plaintiff either would have declined to issue the policy, or at the very least, would have charged a higher premium to help offset the increased risk of loss. (*See* Doc. No. 38 ¶ 17); *see also Tennessee Farmers Life Reassurance Co.*, 210 S.W.3d at 590 (citing *Bagwell v. Canal Ins. Co.* 663 F.2d 710, 712 (6th Cir. 1981)) ("courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy"). Therefore, the Court finds that the misrepresentations in the application were material, and that they increased Plaintiff's risk of loss, thereby providing grounds for Plaintiff to void the policy.

Accordingly, the Court finds that Plaintiff owes no duties of defense or indemnity to Defendants in the underlying case.

Having found that Plaintiff may void the policy and deny coverage under Tenn. Code Ann. § 56-7-103, the Court declines to address Plaintiff's alternative argument that the policy does not provide coverage for the claims against Defendants in the underlying case.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's Motion is **GRANTED** to the extent the Court finds that the policy issued to Defendant Joe Nathan Scott and Defendant Joe Scott d/b/a Scott's Multi-Purpose Building is voidable and Plaintiff owes no duty to defend or indemnify Defendants in the underlying case.

It is so ORDERED.

Entered this the _____24th_____ day of October, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT